**Byron ROBERTS, Plaintiff-Appellant,**

v.

**John BERRY, Jr., Defendant-Appellee.**

No. 75–2231.

United States Court of Appeals,
Sixth Circuit.

Argued June 23, 1976.

Decided Sept. 2, 1976.

**608**

Stanley H. Sidicane, J. Thomas Martin, Nashville, Tenn., for plaintiff-appellant.

Alfred H. Knight, III, John W. Wagster, Nashville, Tenn., for defendant-appellee.

Before EDWARDS and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

John W. PECK, Circuit Judge.

Plaintiff-appellant, invoking the district court's diversity jurisdiction, filed the instant three-count complaint claiming that defendant-appellee had alienated the affections of, seduced, and criminally conversed with appellant's then wife. Defendant moved for partial summary judgment, asserting the one-year statute of limitations for criminal conversation and seduction, Tenn.Code Ann. § 28–304 (Supp.1975), as barring those two counts. The district court denied that motion, but six weeks later *sua sponte* dismissed the complaint, reasoning that the one-year statute of limitations barred even the alienation of affections count because "the subject matter of the action is essentially for criminal conversation," the separate count of alienation of affections being only "incidental." [1]

Plaintiff appeals, contending that the district court should have applied the three-year statute of limitations for alienation of affections, T.C.A. § 28–305 (1955), to the alienation of affections count. Even if the section 28–304 one-year statute of limitations applied to the alienation of affections, as well as to the criminal conversation count, plaintiff claims that dismissal was improper because the district judge incorrectly construed the statute as beginning to run from plaintiff's loss of consortium, *to wit*, no later than the commencement of divorce proceedings culminating in the April, 1973, divorce of plaintiff and his then wife,[2] rather than from plaintiff's discovery

---

1. The district court dismissed the seduction count also on an alternative ground, *to wit*, that, under Tennessee law, only the female or her parents may sue for seduction. *Graham v. McReynolds*, 90 Tenn. (6 Pick) 673, 18 S.W. 272 (1891). Plaintiff's appellate briefs make no challenge to the dismissal of the seduction count.

2. The complaint states, or implies, that plaintiff was divorced on April 3, 1973, the parties' stipulation that the divorce was on April 16, 1973, and plaintiff's affidavit and the district court opinion that the divorce was on April 12, 1973. Regardless of the exact divorce date, the loss of consortium was more than one year prior to the filing of the complaint on April 12, 1974. Plaintiff makes no claim to the contrary.

of defendant's allegedly tortious conduct, the discovery purportedly being December 26, 1973. Even were the district court correct in applying the one-year statute and in running the statute from the loss of consortium, plaintiff argues that dismissal would still be improper because T.C.A. § 28–112 (1955) suspended the running of the statute, defendant assertedly "be[ing] outside [Tennessee] for most of the period" between the purportedly tortious conduct and the filing of the complaint.[3]

We affirm in part, reverse in part.

▇ Of course, the Tennessee statutes of limitations govern (see *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). Since there are no currently applicable

> " 'reported [Tennessee] decision[s] on the precise issue involved,' this court, like other courts in the absence of controlling state precedent, gives 'considerable weight' to the district judge's interpretation of state law. . . . Yet [plaintiff is] 'entitled to a review of the trial court's determination of state law just as . . . of any other legal question.' "

*Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1385 (6th Cir.1975).

See *Bishop v. Wood*, —— U.S. ——, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976).

▇ We respectfully disagree, however, with the district court's application of the § 28–304 one-year statute to the alienation of affections count. The § 28–305 three-year statute explicitly applies to alienation of affections. Tennessee courts have long recognized the

> "distinction between an action for criminal conversation and an action for alienation of affections. It is possible for a cause of action for either to exist without the other. 'While . . . [both actions are] founded on the injury to the right of consortium they are generally

recognized as essentially different. The gravamen or gist of the action where it is for criminal conversation is the adulterous intercourse, and the alienation of affections thereby resulting is regarded as merely a matter of aggravation, whereas the gravamen in the other case is the alienation of affections with malice or improper motives." *Darnell v. McNichols*, 22 Tenn.App. 287, 122 S.W.2d 808, 810 (1938).

Accord, *Stepp v. Black*, 14 Tenn.App. 153, 156 (1931); Prosser, Law of Torts 875–877 (4th ed. 1971).

We recognize that *Broidioi v. Hall*, 188 Tenn. 236, 218 S.W.2d 737 (1949); *Scates v. Nailling*, 196 Tenn. 508, 268 S.W.2d 561 (1954), and *Rheudasil v. Clower*, 197 Tenn. 27, 270 S.W.2d 345, 46 A.L.R.2d 1083 (1954), applied the one-year statute to alienation of affection claims "incidental" to criminal conversation claims. But *Broidioi* was decided prior to the 1950 amendment adding alienation of affections to the § 28–305 three-year statute, *Rheudasil* concerned purportedly tortious conduct prior to the January 1, 1952, effective date of the 1950 amendment, *Scates* relied almost totally on pre-amendment *Broidioi*, and neither *Rheudasil*, nor *Scates* mentioned the 1950 amendment. See *Nabors v. Keaton*, 216 Tenn. 637, 393 S.W.2d 382, 384 (1965). Moreover, unlike the purported alienation claim in *Broidioi*, the instant alienation count avers that defendant alienated the affections "maliciously and with a wanton disregard of plaintiff . . . and with the intent to injure plaintiff and to deprive him of the comfort, society and assistance of his said wife . . . ."

▇ If the alienation claim were merely "incidental" to purported criminal conversation, however, the § 28–304 one-year statute would apply, but at this procedural stage we cannot be sure that the alienation claim is merely "incidental." We cannot

---

**3.** A Sixth Circuit panel, at defendant's suggestion, originally vacated the dismissal and remanded to the district court for reconsideration in light of *McCroskey v. Bryant Air Condition-ing Co.*, Tenn., 524 S.W.2d 487 (1975). The district court thereafter reimposed its dismissal.

sustain the district court's application of the one-year statute because, since the district judge in effect granted a motion to dismiss, we cannot say "that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Greene v. City of Memphis*, 535 F.2d 976, 978 (6th Cir. 1976), quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974). Under the complaint, liberally construed, the plaintiff is entitled to attempt to prove alienation of affections (other than alienation "incidental" to criminal conversation), and the one-year statute would be no bar to such claim.

 We reject, however, plaintiff's claim that the statutes began running only when he discovered defendant's purported tortious conduct (in December, 1973, according to his affidavit), rather than from the loss of consortium. Admittedly, certain language in *Broidioi, supra,* and *Scates, supra,*[4] indicates that the statute begins running at discovery of the tortious conduct, but there the tortious conduct apparently was discovered prior to the loss of consortium. The loss of consortium being the recognizable manifestation of the purported tort, triggering the statute at the loss accords with the Tennessee policy of running the statute from the time "when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *McCroskey v. Bryant Air Conditioning Co.*, Tenn., 524 S.W.2d 487, 491 (1975); *Teeters v. Currey*, Tenn., 518 S.W.2d 512 (1974). But cf. *Gilbert v. Jones*, Tenn.App., 523 S.W.2d 211 (1974). Beginning to run the statute from the discovery of a recognizable manifestation of the purported tort, *to wit,* loss of consortium, rather than from discovery of the underlying tortious conduct also accords with general limitations principles, *see, e.g., Allen v. Ortho Pharmaceutical Corp.*, 387 F.Supp. 364 (S.D.Tex.1974); *Omaha Paper*

*Stock Co. v. Martin Eby Const. Co.*, 193 Neb. 848, 230 N.W.2d 87 (1975); *Sedlak v. Ford Motor Co.*, 64 Mich.App. 61, 235 N.W.2d 63 (1975), as applied to alienation of affection claims, Annot., When Statute of Limitations Begins to Run Against Action for Loss of Services or Consortium, 173 A.L.R. 750, 772–784 (1948), and with the Kentucky discovery doctrine this court applied in *Hall v. Musgrave*, 517 F.2d 1163 (6th Cir.1975), and the Tennessee supreme court cited approvingly in *Teeters, supra,* 518 S.W.2d at 516–517.

 Plaintiff, having failed to raise section 28–112 in the district court, cannot assert it for the first time on appeal. *Myers v. Alvey-Ferguson Co.*, 326 F.2d 590 (6th Cir.1964); *Babb v. Schmidt*, 496 F.2d 957, 960 (9th Cir.1974). But cf. *Frederick Steel Co. v. Commissioner of Internal Revenue*, 375 F.2d 351, 355 (6th Cir.), *cert. denied*, 389 U.S. 901, 88 S.Ct. 219, 19 L.Ed.2d 217 (1967). In any event, a sufficient showing of a factual background on which to base a tolling of the statute during defendant's absence from the state would appear to be lacking.

The district court judgment dismissing the alienation of affections count will be reversed, and its judgment dismissing the criminal conversation and seduction counts affirmed.

Affirmed in part, reversed in part.

---

4. *Scates* also contains language that "the Statute of Limitations begins to run thereon at the time of the loss of affection or the loss of consortium is sustained . . . ." 196 Tenn. at 510, 268 S.W.2d at 561.